UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| DALE K. CUMMINGS, | ) | CIV. 13-5014-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Plaintiff Dale K. Cummings filed a complaint appealing from an administrative law judge's ("ALJ") decision denying disability benefits.  (Docket 1).  Defendant denies plaintiff is entitled to benefits.  (Docket 9).  The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF").  (Docket 11).  The parties filed their JSMF.  (Docket 15).  For the reasons stated below, plaintiff's motion to reverse the decision of the Commissioner (Docket 16) is denied and defendant's motion to affirm the decision of the Commissioner (Docket 22) is granted.

**FACTUAL AND PROCEDURAL HISTORY**

The parties' JSMF (Docket 15) is incorporated by reference.  Further recitation of salient facts is included in the discussion section of this order.

On January 20, 2011, plaintiff Dale K. Cummings applied for social security disability benefits alleging a disability onset date of September 18, 2009.

(Docket 15 at ¶ 1).  The claims were denied initially on March 18, 2011, and on reconsideration on July 29, 2011.  Id. at ¶¶ 3, 5.  Mr. Cummings filed a request for a hearing on August 22, 2011, and a hearing was held on February 13, 2012. Id. at ¶¶ 6, 11.  Id.  On April 26, 2012, the ALJ issued a decision finding Mr. Cummings was not disabled and denying benefits.  Id. at ¶ 11; see also Administrative Record, pp. 9-19.[1]  Mr. Cummings subsequently sought review from the Appeals Council and on December 11, 2012, the Appeals Council denied the request for review.  (Docket 15 at ¶ 12).  Mr. Cummings then filed a complaint requesting judicial review.  (Docket 1).  The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration.  It is from this decision which Mr. Cummings timely appeals.

This issue before the court is whether the ALJ's decision of April 26, 2012, (the "2012 ALJ decision") that Mr. Cummings was not "under a disability, as defined in the Social Security Act, from September 18, 2009, through [April 26, 2012]" is supported by the substantial evidence on the record as a whole.  (AR at p. 19); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

---

[1]The court will cite to information in the administrative record as "AR at p. ___."

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580.  The court reviews the Commissioner's decision to determine if an error of law was committed.  Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny disability benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision."  Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005).  A reviewing court may not reverse the Commissioner's decision " 'merely because substantial

evidence would have supported an opposite decision.' " Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).

## DISCUSSION

"Disability" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [or combination of impairments] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled.  20 CFR § 404.1520(a)(4).  If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled.  Id.  The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment–one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998).  The ALJ applied the five-step sequential evaluation required by the Social Security Administration

regulations.  (AR at pp. 11-19).  At step five of the evaluation, the ALJ found there were jobs that existed in significant numbers in the national economy that Mr. Cummings could perform, and he was, therefore, not disabled.  Id. at pp. 18-19.

## A.    PLAINTIFF'S ISSUES ON APPEAL

Mr. Cummings identifies the following issues: (1) the ALJ failed to identify "severe" impairments at step two of the sequential evaluation; (2) the ALJ failed to properly develop the record; (3) the ALJ failed to properly assess Mr. Cummings' credibility; (4) the ALJ failed to properly weigh the opinion evidence; and (5) the ALJ improperly assessed Mr. Cummings' residual functional capacity. The court will discuss each issue in turn.

### 1.    Whether the ALJ failed to identify all of Mr. Cummings' severe impairments.

The ALJ found Mr. Cummings has the following severe impairments: coronary artery disease status post small myocardial infarction and stent, and status post fractured tibia.  (AR at p. 11).  The ALJ acknowledged Mr. Cummings' alleged disability due to diabetes, but found "[h]e has had [this] condition since [the] age of 12 and has worked in the past at the level of substantial gainful activity . . . [and there was] no evidence that his condition ha[d] worsened to suggest that it would now have more than minimal impact on his ability to perform work related activity."  Id.

The ALJ found Mr. Cummings' "medically determinable mental impairment of depression, not otherwise specified, [did] not cause more than minimal limitation in [his] ability to perform basic mental work activities and [was] therefore nonsevere." Id. at p. 12. In making this finding, the ALJ "considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing Impairments." Id. The ALJ adopted the State Agency psychological expert's opinion, which concluded plaintiff did not have limitations in activities of daily living, social functioning, concentration, persistence or pace, and had no episodes of decompensation of extended duration. Id. The ALJ found the record did not contain "significant limitations due to psychological issues." Id.

The ALJ noted Mr. Cummings' alleged disability due to attention deficit disorder, but remarked Mr. Cummings had "no documented diagnosis or treatment for such condition." Id.

Mr. Cummings argues the ALJ should have found his diabetes was severe. Mr. Cummings contends his diabetes was longstanding and poorly controlled and had more than a minimal impact on his ability to perform basic work activities. (Docket 17 at p. 35). Mr. Cummings asserts the ALJ's conclusion his depression was not severe was not supported by substantial evidence. Id. at p. 36.

"It is the claimant's burden to establish that his impairment or combination of impairments are severe." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). A severe impairment is defined as one which significantly limits a physical or mental ability to do basic work activities. 20 CFR § 404.1521. An impairment is not severe, however, if it "amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby, 500 F.3d at 707. "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." Id. (citation omitted). Additionally, the duration requirement must be met. The impairment must have lasted at least twelve months or be expected to result in death. See 20 CFR § 404.1509.

The court finds there is ample evidence in the record to support the ALJ's conclusion that Mr. Cummings' diabetes and depression were not severe. Mr. Cummings had diabetes since he was twelve years old. (Docket 15 at ¶ 25). Despite dealing with his type 1 diabetes on a daily basis, Mr. Cummings was able to work for Merrillat Industries for 25 years operating various machinery. Id. at ¶¶ 19, 22. His job with Merrillat ended when the plant was sold in 2009. Id. at ¶ 19. Although the record indicates Mr. Cummings' diabetes was uncontrolled or poorly controlled, the record reflects Mr. Cummings admitted on several occasions to not taking his medication or checking his levels on a consistent basis. Id. at ¶¶ 117, 119, 170, 179, 184, 189, 243. His treating

7

physicians often had to remind him to take his insulin medication on a regular basis and to consistently check his blood sugars.  Id. at ¶¶ 170, 184, 189, 197, 200, 227.  The record indicates Mr. Cummings' insulin dosage generally remained the same, but doctors encouraged Mr. Cummings to check his levels more often.  Id. at ¶¶ 153, 197, 227, 235, 238, 243.  Mr. Cummings did on occasion increase the insulin dosage on his own.  Id. at ¶¶ 247, 256.  Mr. Cummings' treating physicians consistently found, on examination, that he had full strength, normal gait, normal sensation, no lesions and no deformities.  Id. at ¶¶ 172, 196, 237, 243, 244; see also AR at p. 579).  Mr. Cummings testified he was able to keep his blood sugar at appropriate levels by exercising and resting when needed and was trying to manage his blood sugars without insulin. (Docket 15 at ¶¶ 40, 42).

Mr. Cummings' daily activities also are consistent with the ALJ's finding that Mr. Cummings' diabetes had not significantly deteriorated.  Mr. Cummings played his guitar for a couple of hours per day, spent time teaching his grandson to play the guitar, and performed significant activities using his hands.  Id. at ¶¶ 40, 98, 161, 165, 202, 244).

Based on the medical records, the ALJ did not err in concluding Mr. Cummings' diabetes was nonsevere.  Rather, the evidence supports a finding diabetes did not significantly limit his physical or mental ability to do basic work activities.

Mr. Cummings argues the ALJ erred in finding his anxiety and depression were not severe impairments.  The record in this case indicates Mr. Cummings was diagnosed with depression and has been treated with antidepressants and anti-anxiety medication since August 1998.  Id. at ¶¶ 121, 138, 149-50.  Since August 1998, Mr. Cummings worked for Merrillat Industries and did so until the plant was sold in 2009.  Id. at ¶ 19.  Mr. Cummings testified his antidepressant medications were helping to control his depression.  Id. at ¶ 34, 95.

Mr. Cummings alleges he suffered from attention deficit disorder and claims a doctor told him as a young child that he suffered from attention deficit disorder.  (Docket 15 at ¶ 93, 95, 103).  However, the record does not reflect Mr. Cummings was ever treated for attention deficit disorder nor does it indicate any type of limitation related to attention deficit disorder.  Mr. Cummings admits he never took medication to treat attention deficit disorder.  Id. at ¶ 95.  Mr. Cummings did not carry his burden to show that his attention deficit disorder was severe.

Dr. Atkins, a State Agency Psychologist, opined Mr. Cummings had no limitations in activities of daily living, social function, concentration, persistence or pace, and no episodes of decompensation.  (AR at p. 12).  Mr. Cummings argues the ALJ erred in relying on Dr. Atkins' opinions because his "opinion was based upon absence of evidence."  (Docket 17 at p. 37).  Despite this argument, Mr. Cummings bears the burden of establishing his impairments or combination

of impairments are severe.  Kirby, 500 F.3d at 707.  Mr. Cummings failed to produce evidence establishing he experienced functional limitations due to anxiety, depression, or attention deficit disorder.  Despite these impairments, the record indicates Mr. Cummings was not significantly limited in his physical or mental ability to do basic work activities.  The record reflects essentially normal mental status examinations.  (Docket 15 at ¶¶ 172, 187, 196).  The court finds, based on a review of the record, the ALJ's conclusion Mr. Cummings' mental impairments caused no limitation in daily activities, social functioning, or concentration, persistence, or pace is supported by substantial evidence.  As a result, the court finds the ALJ did not err at step two of the sequential evaluation.

### 2.  Whether the ALJ properly developed the record.

Mr. Cummings argues the ALJ erred by relying on Dr. Atkins' opinion his depression, anxiety, and attention deficit disorder were nonsevere impairments. (Docket 17 at pp. 36-38).  Dr. Atkins based his opinion upon finding "no specific significant limitations documented secondary to his depression or his anxiety in the record." (Docket 15 at ¶ 17).  Mr. Cummings argues Dr. Atkins' opinion is based on a lack of evidence and therefore the "ALJ was required to order a psychological consultative evaluation" to completely develop the record.  (Docket 17 at pp. 37-38).  The court disagrees.  "It is true that an ALJ has a duty to develop the record fully." Haley v. Massanri, 258 F.3d 742, 749 (8th Cir. 2001)

(citing <u>McGee v. Harris</u>, 683 F.2d 256, 260 (8th Cir. 1982)).  " 'It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision.' " <u>Boyd v. Sullivan</u>, 960 F.2d 733, 736 (8th Cir. 1992) (quoting <u>Reeves v. Heckler</u>, 734 F.2d 519, 522 n. 1 (11th Cir. 1984)).

There was substantial evidence in the record to allow the ALJ to make an informed decision in this case.  The medical reports from treating and examining physicians indicate Mr. Cummings' depression and anxiety were controlled by medication.  Mr. Cummings told his treating physician that medication helped to "mellow[] him out."  (Docket 15 at ¶ 34).  Although numerous medical records are included in the record, those materials do not indicate Mr. Cummings suffered functional limitations as a result of depression, anxiety, or attention deficit disorder.  The record contained substantial evidence to support the ALJ's decision.  <u>See</u> <u>Anderson v. Shalala</u>, 51 F.3d 777, 779 (8th Cir. 1995) ("An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision") (internal quotation marks omitted).  Furthermore, "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial."  <u>Shannon v. Chater</u>, 54, F.3d 484, 488 (8th Cir. 1995) (internal quotation marks omitted) (quotation omitted).  Mr. Cummings made no such

11

showing.  Therefore, the ALJ did not err in failing to send the claimant for a consultative examination.

### 3.  Whether the ALJ properly assessed Mr. Cummings' credibility.

Mr. Cummings argues the ALJ's credibility determinations are not supported by the record.  (Docket 17 at pp. 38-45).  Defendant contends the ALJ properly considered the record, noted inconsistencies and gave good reasons for his credibility assessment.  (Docket 23 at pp. 12-20).

The ALJ determines the weight attributable to a claimant's subjective complaints, including pain, according to the framework created in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  Five Polaski factors guide the ALJ's credibility determinations: "1) the claimant's daily activities; 2) the duration, frequency, and intensity of the pain; 3) the dosage, effectiveness, and side effects of medication; 4) precipitating and aggravating factors; and 5) functional restrictions."  Choate, 457 F.3d at 871.  The ALJ need not mechanically discuss each of the Polaski factors.  See Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005).  Although the ALJ can discount a claimant's subjective complaints for inconsistencies within the record as a whole, "the ALJ must make express credibility findings and explain the record inconsistencies that support the findings."  Dolph v. Barnhart, 308 F.3d 876, 879 (8th Cir. 2002).  The court will not disturb the decision of an ALJ who seriously considers, but for good

reason expressly discredits a claimant's subjective complaints.  See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999).

The ALJ noted Mr. Cummings suffered from "coronary artery disease status post small myocardial infarction and stent, and status post fractured tibia." (AR at p. 11).  The ALJ noted Mr. Cummings' alleged depression, anxiety, and attention deficit disorder.  Id. at p. 12.  The ALJ concluded Mr. Cummings' "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . however, [Mr. Cummings'] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to extent they [were] inconsistent with [the] residual functional capacity assessment."  Id. at p. 15.  The ALJ recognized Mr. Cummings' "impairments may cause him some discomfort and pain" but that it did not rise to the level of precluding Mr. Cummings from substantial gainful employment.  Id.

In this case, the ALJ acknowledged the analytical framework for credibility determinations and stated he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p."  (AR at p. 13).

After reviewing the record in this case, the court finds the ALJ's credibility determination is support by substantial evidence in the record as a whole.  The ALJ noted Mr. Cummings gave conflicting reports regarding why he stopped

13

working.  He alleged he stopped working at the Merrillat Industries plant due to his medical conditions, but also reported he worked until the plant was sold in September of 2009 when he then became unemployed.  Mr. Cummings argues the ALJ erred by considering the fact he worked at levels below substantial gainful activity following September 2009.  While this factor alone is not indicative of Mr. Cummings' credibility, it is a factor the ALJ appropriately considered because it occurred during a time period Mr. Cummings alleged he was totally disabled.  20 CFR § 404.1529(c)(3) (the ALJ can consider prior work records when assessing credibility).

The ALJ noted Mr. Cummings and his mother provided inconsistent statements regarding Mr. Cummings' daily activities.  Id. at p. 14.  Mr. Cummings noted he needed help with showering and getting dressed, was unable to tolerate extreme heat or cold, and was unable to prepare his own meals.  Id.  Mr. Cummings also alleged he suffered from stiff hands and had neuropathy in his arms and feet.  Id.  Mr. Cummings' mother's assessment indicated he had no problems living independently or caring for his personal hygiene, was able to help with chores, handle his personal finances, and drive a car.  Id.; see also Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007) (holding ALJ properly found claimant's statements not credible where the statements were inconsistent with his mother's statements regarding his abilities); Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2009) (noting "acts such as cooking,

14

vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain.").

The ALJ found Mr. Cummings' alleged limitations were inconsistent with other evidence in the record. Although Mr. Cummings alleged he suffered from neuropathy and had stiff hands, he played the guitar for two hours a day and was able to perform vehicle and home repairs, including pulling the engine from a motorcycle. (Docket 15 at ¶¶ 40, 161, 165, 202, 243). These activities are inconsistent with Mr. Cummings' testimony regarding his limitations. The ALJ's credibility determination also is supported by Mr. Cummings' essentially normal physical examinations. Id. at ¶¶ 172, 182, 184, 187, 196, 200, 225, 234, 237, 243, 244.

The ALJ found Mr. Cummings' limitations regarding his blood sugars were not fully credible. Mr. Cummings testified he had trouble controlling his blood sugars. However, the record is clear as discussed above, Mr. Cummings did not always use his insulin medication or consistently check his blood sugars, and was reminded by his physician on numerous occasions to take his insulin on a consistent basis. Mr. Cummings also testified he was trying to control his blood sugars on his own.

Mr. Cummings claimed disability because of problems he was having with his leg after fracturing his tibia. Mr. Cummings argues "he could have permanent problems with his left leg." (Docket 17 at p. 40). However, this

position is inconsistent with the medical evidence in the record. Dr. Kadrmas' medical notes reflect that in September 2011 Mr. Cummings "continued to do reasonably well." (Docket 15 at ¶ 241). Mr. Cummings did indicate some "hypersensitivity involving the distal interlocking screws" and inquired whether the hardware removal may be of benefit to him. Id. Dr. Kadrmas found Mr. Cummings' leg was "really nicely healed" with "minimal soft tissue swelling involving his left lower extremity." Id. Dr. Kadrmas found "no pain with stress in the fracture site" and told Mr. Cummings the hardware should not be removed for at least a year "to allow [for] complete healing." Id. Based on the record, there is no indication, as Mr. Cummings suggests, that he would have any particular functional limitation going forward. Rather, the examination notes indicated his leg was healing appropriately and needed time to heal completely.

In sum, the court finds the ALJ properly considered and discounted Mr. Cummings' subjective complaints. The court must "defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (internal quotation marks and citations omitted). The ALJ's credibility determination as to plaintiff's pain stands and Mr. Cummings' challenge to the 2012 ALJ decision on this ground is denied.

**4.   Whether the ALJ properly considered Dr. Skaleski's opinion.**

Mr. Cummings contends the ALJ erred in discounting Dr. Skaleski's opinions regarding Mr. Cummings' limitations.  (Docket 17 at pp. 45-48).  The defendant asserts the ALJ properly considered the record and "gave good reasons, supported by substantial evidence in the record as a whole, for assigning Dr. Skaleski's opinion little weight . . . ."  (Docket 23 at p. 20).

"A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  House v. Astrue, 500 F.3d 741, 744 (8th Cir. 2007) (citation and internal quotation marks omitted).  However, "while entitled to special weight, it does not automatically control, particularly if the treating physician evidence is itself inconsistent."  Id. (citations and internal quotation marks omitted).  "It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record."  Prosch v. Apfel, 201 F.3d 1010, 1013–14 (8th Cir. 2000).  If the treating physician's opinion is not given controlling weight under 20 CFR § 404.1527(c)(2), it must be weighed considering the factors in 20 CFR §§ 404.1527(c)(2)-(6); see Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003) ("Where controlling weight is not given to a treating source's opinion, it is weighed according to the factors enumerated . . . .").  The ALJ must " 'give good'

17

reasons for discounting a treating physician's opinion." Dolph, 308 F.3d at 878-79.

The ALJ gave little weight to the opinions of Dr. Skaleski, Mr. Cummings' treating physician.  The ALJ noted Dr. Skaleski opined in December of 2010 Mr. Cummings was unable to work primarily because of depression.  (AR at p. 15). The ALJ found this to be inconsistent with the treatment records and State Agency psychological experts.  Id.  The ALJ remarked Dr. Skaleski was not an expert in the field of psychology and found Mr. Cummings' limitations were not as severe as Dr. Skaleski opined.  Id. at pp. 15-16.

Dr. Skaleski opined Mr. Cummings could occasionally lift up to 10 pounds and could rarely finger, grasp, handle or crouch.  The ALJ found this opinion was not supported by the medical evidence.  The ALJ found "no evidence or diagnosis of any condition which would limit [Mr. Cummings'] ability to grasp, reach, handle and finger."  Id. at p. 17.  Finally, the ALJ found Dr. Skaleski's opinions "were inconsistent with the findings of the State Agency disability experts and the medical expert."  Id.

After reviewing the record in this case, the court finds the ALJ gave good reasons for assigning Dr. Skaleski's opinion less weight.  In December 2010, Dr. Skaleski opined it was his belief Mr. Cummings' principal problem was his depression.  (Docket 15 at ¶ 189).  The ALJ found this opinion was unsupported by medical records, which indicated Mr. Cummings' depression was well

controlled by medication and also reflected essentially normal mental health exams.  Id. at ¶¶ 34, 95, 121, 138, 149-50; see also Prosch, 201 F.3d at 1013-14 (ALJ may grant less weight to treating physician's opinion when it conflicts with other substantial evidence in the record).  Although Dr. Skaleski was entitled to express his opinion about Mr. Cummings' mental health disorder, it is undisputed Dr. Skaleski is not an expert in this area.  The ALJ is permitted to give less weight to the opinion of a source who is not a specialist.  20 CFR § 404.1527(c)(5).  In this case, the court finds the ALJ gave good reasons for assigning less weight to Dr. Skaleski's opinion related to Mr. Cummings' mental health.

The ALJ found Dr. Skaleski's opinion regarding Mr. Cummings' physical limitations was not supported by the record.  Dr. Skaleski opined Mr. Cummings could only "rarely finger, grasp, or handle."  (Docket 15 at ¶ 265).  Dr. Skaleski also opined Mr. Cummings could sit for a maximum of 3 hours a day, stand or walk 0-2 hours, and occasionally lift up to 10 pounds.  Id. at ¶¶ 265-68.  The record in this case does not support this limitation.  Although Mr. Cummings did report stiffness in his hands and neuropathy in his arms and feet, no physician made a finding or diagnosis to support the severe limitations opined by Dr. Skaleski.

Mr. Cummings' own actions and testimony are inconsistent with Dr. Skaleski's opinions.  Mr. Cummings played the guitar for two hours a day, was

19

able to perform vehicle and home repairs, including pulling the engine from a motorcycle, all activities which require significant fingering, grasping, and handling. (Docket 15 at ¶¶ 40, 161, 165, 202, 243). Mr. Cummings testified he can sit for 40 minutes at a time and can lift about 20 pounds. (AR at p. 15). Mr. Cummings stated he could stand for an hour or more at a time before sitting down again and could walk "a good mile, at least" without taking a break. (Docket 15 at ¶¶ 33, 43). Mr. Cummings' exams also indicate he had normal gait both before he fractured his tibia and approximately six months after his fracture, had full 5/5 muscle strength, and his fractured tibia was healing well. Id. at ¶¶ 172, 196, 229-34, 236, 237, 240-41, 243, 244.

Finally, Mr. Cummings asserts the ALJ erred by giving substantial weight to non-examining State Agency physicians. An ALJ may give greater weight to non-examining medical experts where the ALJ gives good reasons for his findings. Tindell v. Barnhart, 444 F.3d 1002, 1006 (8th Cir. 2006). In this case, the ALJ found the record supported the opinions of the State Agency disability and medical experts. (AR at p. 17). Dr. Winkler, a state agency medical expert, opined in part after reviewing the medical records that Mr. Cummings was capable of lifting and carrying up to 20 pounds, sitting for 4 hours at one time, standing or walking for 2 hours each at one time without interruption, sit for up to 8 hours a day, stand or walk each for 6 hours a day, frequently reach in all directions, finger, handle, feel, push or pull bilaterally. (AR at p. 17). This

20

opinion is supported by the record in this case and Mr. Cummings' own testimony and actions.  The notations in the medical records indicate Mr. Cummings had essentially normal exam findings.  (Docket 15 at ¶¶ 172, 182, 184, 187, 196, 200, 225, 234, 237, 243, 244).  In addition to the medical records, Dr. Winkler's opinion is supported by the daily activities Mr. Cummings engaged in, including home and automotive repair and playing the guitar on a frequent basis.

The ALJ gave good reasons for not assigning controlling weight to Dr. Skaleski's opinion.  <u>Dolph</u>, 308 F.3d at 878-79; <u>see also</u>, <u>Choate</u>, 457 F.3d at 867-71 (affirming the ALJ's reliance on the opinion of a reviewing physician and the persuasive portions of two treating physicians' opinions in assessing residual functional capacity when the treating physicians' opinions as to the claimant's functional limitations were unsupported and inconsistent).  It is not the role of the court to re-weigh the evidence and it cannot reverse the Commissioner's decision because the decision is supported by good reason and is based on substantial evidence.  <u>Guilliams</u>, 393 F.3d at 801.

**5.  Whether the ALJ properly assessed Mr. Cummings' residual functional capacity.**

Mr. Cummings argues the ALJ's "Step Two failure to identify severe impairments resulted in an inadequate credibility assessment, and in combination these errors resulted in an inadequate RFC."  (Docket 17 at p. 50). The court already determined the ALJ did not err in identifying severe

impairments at Step Two of the sequential process or in assessing Mr.

Cummings' credibility.  The court finds the ALJ's residual functional capacity

assessment is supported by substantial evidence in the record as a whole and by

Mr. Cummings' testimony and daily activities.

The ALJ found Mr. Cummings had the "residual functional capacity to

perform light work as defined in 20 CFR 404.1567(b)."  (AR at p. 13).

Specifically, the ALJ found:

> [T]he claimant can frequently lift and carry up to 20 pounds.  He can sit
> for 4 hours at one time without interruption, he can stand or walk for
> 2 hours each at one time without interruption. The claimant can sit for
> up to 8 hours a day, stand or walk each for 6 hours a day. He can
> frequently reach in all directions, finger, handle, feel, push or pull
> bilaterally. The claimant can frequently operate foot controls bilaterally.
> He can occasionally climb stairs and ramps but never climb ladders or
> scaffolds, he can frequently balance, stoop, kneel, crouch and crawl.
> The claimant should never be exposed to unprotected heights, he can
> occasionally be exposed to moving mechanical parts, he can frequently
> operate a motor vehicle, humidity and wetness and exposure to dust,
> odors, fumes and pulmonary irritants. He can occasionally tolerate
> extreme cold and heat and frequent exposure to vibrations. He can he
> exposed to very loud noise (jackhammer).

Id.

Mr. Cummings testified he could sit for 40 minutes, stand for an hour,

could walk for "a good mile, at least," and could lift up to 20 pounds.  (Docket 15

at ¶¶ 33, 40, 41).  Mr. Cummings also testified he would sit and play his guitar

for two hours a day.  Id. at ¶ 40.  In September of 2011, Dr. Skaleski opined Mr.

Cummings could sit for 3 hours, stand or walk for 0-2 hours, and occasionally

lift 20 pounds.  Id. at ¶ 266.

22

The ALJ asked the vocational expert whether a person who could sit for 2 to 3 hours, stand for 2 hours, walk 100 yards, lift and carry 20 pounds could perform duties of occupations in the national economy.  Id. at ¶ 46.  This question was tailored to the limitations established by Mr. Cummings and Dr. Skaleski.  The vocational expert responded that such a person could perform the duties of an electronic worker, parking lot attendant and survey worker.  Id. at ¶ 48.

The remaining portions of the RFC are supported by Mr. Cummings' testimony.  The ALJ found Mr. Cummings could frequently reach in all directions, finger, handle, feel, and push or pull with both hands.  (AR at p. 13).  This is supported by Mr. Cummings' statements he could play the guitar for a couple of hours at a time and work on motorcycles and car engines.  (Docket 15 at ¶¶ 40, 161, 165, 202).  The ALJ limited Mr. Cummings to only occasional exposure to extreme cold or heat.  (AR at p. 13).  Mr. Cummings testified he could not spend time working outside if it were too hot or cold.  (Docket 15 at ¶¶ 36, 105).

Mr. Cummings contends the ALJ erred in "rely[ing] entirely on non-examining opinion for his assessment of RFC."  (Docket 17 at p. 51) (citing Nevland v. Apfel, 204 F.3d 853 (8th Cir. 2000).  The court disagrees.  As discussed above, the ALJ incorporated many of the limitations Mr. Cummings testified he had as a result of his impairments and adopted portions of Dr.

23

Skaleski's opinions which were supported by the record.  The ALJ's determination is supported by substantial evidence in the record as a whole. The court finds the ALJ did not err in determining Mr. Cummings' residual functional capacity.

## ORDER

Based on the foregoing discussion, the court finds the ALJ's decision is supported by substantial evidence on the record as a whole.   Accordingly, it is hereby

ORDERED that plaintiff's motion to reverse the decision of the Commissioner (Docket 16) is denied.

IT IS FURTHER ORDERED that defendant's motion to affirm the decision of the Commissioner (Docket 22) is granted.

Dated March 24, 2014.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE